# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

May 19, 2026

**VIA ECF**

Hon. Lorna G. Schofield
United States District Judge
Southern District of New York
New York, NY 10007

Re:    *United States v. Dashae Trotman*, 23 Cr. 63 (LGS)

*Defendant Dashae Trotman's application for the early termination of his period of supervised release is GRANTED.  The Clerk of the Court is directed to terminate the motion at docket number 33.*

*Dated: June 2, 2026*
*New York, New York*

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

Dear Judge Schofield:

   I write on behalf of Dashae Trotman to request the early termination of his supervised release, pursuant to 18 U.S.C. § 3583(e)(1). Mr. Trotman was sentenced to two years of supervised release and has served over a year and a half. While on supervised release, Mr. Trotman has completed all required programming and maintained employment. Mr. Trotman has a bright future and has shown that he no longer requires supervision.

   Probation has also recognized this and does not oppose early termination of supervision. In supporting the instant application, Officer John Gomez, Mr. Trotman's probation officer, noted the following in an email to the defense:

   - He has maintained an open line of communication with [Probation], reports to the office as directed, and makes himself available for field contacts.
   - He has abstained from the use of illicit substances.
   - He has secured employment and provided employment verification.

*See* Email from Probation Officer John Gomez, attached as Exhibit A.[1]

   Granting Mr. Trotman's application would allow him to travel freely to visit his sisters, nieces, and nephews out of state. Mr. Trotman no longer needs judicial supervision, as he has dedicated significant time and effort into rehabilitating his life, successfully reintegrating into society.

---

[1] The defense reached out to AUSA Katherine Cheng to obtain the government's position on the defendant's application, but has not received a response as of the time of this filing.

1

## I.    <u>Background</u>

On October 24, 2023, this Court sentenced Mr. Trotman to 28 months' imprisonment to be followed by a two-year term of supervised release with drug testing and program attendance conditions. Mr. Trotman was incarcerated at FCI Ray Brook and released to a halfway house on July 2, 2024. He officially began his term of supervision on October 30, 2024.

While incarcerated, Mr. Trotman completed a literacy program, which has grown into a love for reading. Since his release, Mr. Trotman has completed outpatient programs at Samaritan Village and VIP Community Services. He is currently residing in Odyssey House's supportive housing at 1328 Clinton Ave., and participating in Odyssey House's outpatient treatment program, as well as its reentry program. Mr. Trotman has just received a housing voucher and is currently applying for permanent housing.

Mr. Trotman has completed multiple building maintenance internships, and is now working a long-term internship with the option of conversion into a full-time job. In his free time, he reads educational and philosophical books. While on supervision, Mr. Trotman has reported consistently as he is required, and has had no violations or positive drug tests. Mr. Trotman seeks the early termination of his supervision so that he may visit his older sisters, nephews, and nieces that reside out of state without restriction.

## II.    <u>Legal Standard</u>

This Court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release… if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." <u>18 U.S.C. § 3583</u> (e)(1). Supervised release is meant to fulfill rehabilitative, forward-looking ends. *Esteras v. United States*, <u>606 U.S. 185, 186</u> (2025) (citing *United States v. Johnson*, <u>529 U.S. 53, 59</u>–60 (2000)). As such, terms of supervised release should not be considered terms of required punishment, but rather "aspirational goal[s]" that may be terminated when a supervisee is able to accomplish "rehabilitation and reentry" in less time. *United States v. Morgan*, No. 1:24-CR-371 (FB), <u>2026 WL 391890</u>, at *5 (E.D.N.Y. Feb. 12, 2026).

The U.S. Sentencing Commission adopted its Amendments to the Sentencing Guidelines on April 30, 2025, effective on November 1, 2025. The comments to this Amendment describe this section as being designed to "encourage appropriate use of early termination…For example, the court may wish to consider early termination of supervised release if the defendant is an abuser of narcotics, other controlled substances, or alcohol who, while on supervised release, successfully completes a treatment program, thereby reducing the risk to the public from further crimes of the defendant. <u>U.S.S.G. § 5D1.2</u>, cmt. n.5.

In its provisions, the Commission recommends a non-exhaustive list of factors for a court to consider after the 12-month mark of supervision in determining whether termination is warranted:

>(i) any history of court-reported violations over the term of supervision;
>
>(ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);
>
>(iii) the defendant's substantial compliance with all conditions of supervision;
>
>(iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;
>
>(v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and
>
>(vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

U.S.S.G. § 5D1.4 cmt. n.1.  Indeed, courts in this District have recently relied upon the Sentencing Commission's new guidance on these applications to justify early termination of supervised release.  *See, e.g.*, *United States v. Khan*, 21 Cr. 313 (JPO) (S.D.N.Y. Mar. 10, 2026), ECF No. 283 (granting the defendant's motion for early termination of supervised release over the objections of both Probation and the Government and citing the new U.S.S.G. § 5D1.4 Guidelines encouraging an "individualized assessment of the need for ongoing supervision" to support its decision); *see also United States v. Soto*, No. 19 Cr. 903 (S.D.N.Y. Mar. 10, 2026), ECF No. 60 (granting termination of supervised release over Government objection); *United States v. McIntosh*, 24 Cr. 480 (GHW) (S.D.N.Y. Jan. 27, 2026), ECF No. 9 (same).

As discussed further below, Mr. Trotman has excelled in each of these factors and has shown that he no longer requires probationary supervision.

3

### III.    Termination of Supervised Release is in the Interests of Justice

The termination of Mr. Trotman's supervised release is in the interests of justice, as Mr. Trotman has outgrown the need for Probation's services, demonstrated consistently compliant behavior, and successfully rebuilt his life and place in the community.

For most of his life, Mr. Trotman suffered from a vicious cycle, in which his self-medication for trauma and depression led to substance abuse, only worsening his physical and mental health. Mr. Trotman, however, has successfully broken this cycle. Specifically, Mr. Trotman has discovered ways of emotional regulation and dealing with negative thoughts that do not involve substance use. He has unlearned the behaviors that led him to make poor decisions. Now, Mr. Trotman is focused on rebuilding his life, sober and uninhibited.

While incarcerated, Mr. Trotman decided that he needed to change. He reflected on the ways that he let his circumstances and impulses dictate his life. He explored music and songwriting as means of expressing himself. After his release and program attendance, Mr. Trotman learned that negative thoughts are inevitable, but reactions were not. He started reading books about philosophy, to try and find the person he wanted to be: a person that could ignore negative thoughts and instead contribute positively to society. Mr. Trotman is particularly compelled by the work of German philosopher Eckhart Tolle. In our conversations, he has shared that he has resonated with the concept of the "silent watcher" from Tolle's book, *The Power of Now*. Using Tolle's theories as a framework, Mr. Trotman is working to develop an identity that is independent of negative, painful thoughts.

Mr. Trotman's maturation has also led to a recognition of the importance of employment and financial stability. Since his release, he has dedicated himself to finding and maintaining a job. He first completed an internship in custodial building maintenance, working at a corporate building in Midtown Manhattan. Currently, Mr. Trotman works a long-term building maintenance internship in a residential building. He works five days a week from 10 A.M. to 3 P.M., attending programming and reading books in his free time. He has learned valuable maintenance skills, such as how to fix light fixtures, patch walls, and clean apartments. He has also maintained friendly relationships with tenants and his coworkers. Mr. Trotman enjoys his job and anticipates that it will turn into a full-time position.

In addition to focusing on his career trajectory, Mr. Trotman has been steadfast in maintaining his relationship with his siblings – the only family he has. Mr. Trotman had a deeply traumatic upbringing: he grew up without parental figures or any adult care, and started using substances before he even became a teenager. Mr. Trotman's parents passed away when he was five years old, and Mr. Trotman and his siblings grew up in foster care. By the time Mr. Trotman was 13 years old, he had dropped out of school and was regularly using drugs and alcohol.

Throughout his troubled youth, while he was in and out of correctional facilities, the only consistent figures in Mr. Trotman's life were his siblings.

The youngest of five children, Mr. Trotman hopes to build a deeper relationship with his older siblings. His two older brothers live in the Bronx, but his sister Deeandra lives in Georgia, and his other sister Jeniqua lives in South Carolina. The last time Mr. Trotman saw Jeniqua was last year, when she visited New York for a day. Mr. Trotman does not recall the last time he saw Deeandra. Despite the distance, the family remains close and supports Mr. Trotman fully. As Deeandra writes:

> It means a great deal to our family to see the positive direction he is moving in. I am truly encouraged by his growth and commitment, and I am hopeful and excited to see what the future holds for him.

Letter of Support from Deeandra Trotman, attached as Exhibit B. Jeniqua and Deeandra both have children, but Mr. Trotman has never met his nieces and nephews. Mr. Trotman regrets the time he has lost with his family, and wants to be able to regularly visit his sisters, nephews, and nieces. Mr. Trotman wants to be a good younger brother and uncle, and to show his older siblings the new person he has become.

Officer Gomez has confirmed that Mr. Trotman is doing well on supervised release and therefore is not opposed to his request for early termination. Mr. Trotman's conduct on supervised release "demonstrates that continued court supervision is unnecessary to achieve 'general punishment goals,' as well as the goals of promoting respect for the law, deterring criminal conduct by [Mr. Trotman], and protecting the community from future harm by [him]." *United States v. Noel*, 2021 WL 4033769, at *2 (E.D.N.Y. Sept. 3, 2021). The resources of the Probation Department, which have been particularly taxed as of late, would be better spent on an individual who needs supervision and can benefit from the services offered by a probation officer—not on Mr. Trotman. Furthermore, as Judge Chen in the Eastern District noted, keeping a defendant on supervised release can "impede his ability to visit and reconnect with family who live outside New York—[] which [is] important to maintaining his stability and productivity." *United States v. Riley*, 16 Cr. 281 (PKC) (E.D.N.Y. Sept. 10, 2025). Mr. Trotman has many family members outside of New York who support him and hope he can be relieved of the travel restrictions imposed by supervision so he can freely visit them. Preventing Mr. Trotman from visiting them freely would impede his ability to further reintegrate with a group that has supported him tremendously and impedes the goals of stability and reintegration that supervised release hopes to achieve. *See, e.g., United States v. Bonilla Acevedo*, 17 Cr. 604 (CM) (S.D.N.Y. 2025) (granting early termination of supervised release where one of the defendant's primary reasons for early termination were his limitations on travel to visit his home country of the Dominican Republic with his family); *United States v. Sabaly*, 20 Cr. 473 (VM)

(S.D.N.Y. 2025) (granting early termination where the defendant sought to end his term of supervision primarily to visit his family in Senegal without restriction); *United States v. Misulovin*, 22 Cr. 592 (RA) (S.D.N.Y. 2023) (granting early termination of supervised release where the primary basis for making the application for the defendant, who played an aggravated role in the underlying offense, was his ability to return to Israel to reunite with his family); *United States v. Gonzalez*, 01 Cr. 763 (VM) (S.D.N.Y. 2014) (this Court granted early termination where the defendant sought to facilitate his return to the Dominican Republic).

## IV.        Conclusion

Mr. Trotman's exemplary behavior and growth, both professionally and emotionally, show that he has successfully reintegrated into the community. Given his continued compliance with the terms of supervised release, which is set to expire in approximately six months, and the support of Officer Gomez, it is clear that early termination of supervised release is warranted.

Thank you for your time and attention to this matter.

Respectfully submitted,

*Marisa K. Cabrera*

Marisa K. Cabrera
Assistant Federal Defender
Jadyn Tiong, Legal Fellow
(212) 417-8730

Cc:  AUSA Katherine Cheng

| **From:** | John Gomez |
|---|---|
| **To:** | Marisa Cabrera |
| **Cc:** | Jadyn Tiong |
| **Subject:** | RE: Dashae Trotman |
| **Date:** | 23 April 2026, 22:10:18 |
| **Attachments:** | image001.png |

Hi Marisa,

Thanks for reaching out. ==**Probation does not oppose ET.**== We would like to highlight Mr. Trotman's compliance on supervised release in the following aspects:

- He has maintained an open line of communication with me, reports to the office as directed, and makes himself available for field contacts.
- He has abstained from the use of illicit substances.
- He has secured employment and provided employment verification.

Please reach out if you need any more information.

Best,
John



**John Gomez**
**United States Probation Officer**
**Southern District of New York**
**Office: 212-805-0068**

---

**From:** Marisa Cabrera <Marisa_Cabrera@fd.org>
**Sent:** Wednesday, April 22, 2026 2:36 PM
**To:** John Gomez <John_Gomez@nysp.uscourts.gov>
**Cc:** Jadyn Tiong - FDO <Jadyn_Tiong@fd.org>
**Subject:** Dashae Trotman

Good afternoon,

I am reaching out on behalf of our client, Dashae Trotman. It is my understanding that you are his probation officer. We are hoping to file a motion for early termination of supervised release on his behalf. Could you please let me know Probation's position on the application?

Thanks,
Marisa

Marisa K. Cabrera, Esq.
Director of Strategic Litigation
Federal Defenders of New York – Southern District
52 Duane Street, 10th Floor
New York, NY 10007

212.417.8730 (Office)
212.571.0392 (Fax)

Good Morning Judge Schofield,

My name is Deeandra Trotman, and I am writing as the sister of Dashae (Darius) Trotman.


I have witnessed my brother's struggles earlier in life, and because of that, I want to share how proud I am of the progress he has made over the past few years. He has worked hard to complete his required programs and has taken important steps toward building stability by obtaining and maintaining employment.


It means a great deal to our family to see the positive direction he is moving in. I am truly encouraged by his growth and commitment, and I am hopeful and excited to see what the future holds for him.


I hope this note helps as you review his case. If there is additional information needed from me, please feel free to let me know.


Thanks,

Deeandra Trotman

trotmandee@gmail.com